## PEOPLE v JACKSON

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—FAILURE TO INSTRUCT—
    PRESERVING QUESTION—MANIFEST INJUSTICE—COURT RULES.

    No party may assign as error a trial judge's failure to give a jury
    instruction unless the party objects thereto before the jury
    retires to begin its deliberations; an exception to this rule
    arises where the failure to give an instruction results in mani-
    fest injustice (GCR 1963, 516.2).

2. CRIMINAL LAW—INSTRUCTIONS TO JURY—INTOXICATION DEFENSE—
    MANIFEST INJUSTICE.

    The failure of a trial judge to give an instruction to the jury on
    the defense of intoxication where the defendant did not request
    the instruction and did not object to its omission did not result
    in manifest injustice to the defendant where the intoxication
    instruction would have contradicted the defendant's main de-
    fense and where, while there was evidence that the defendant
    was intoxicated, both witnesses who spoke to that point agreed
    that the defendant's mental and physical functions were not
    significantly impaired.

3. CRIMINAL LAW—EVIDENCE—CROSS-EXAMINATION—IMPEACHMENT—
    PRIOR INCONSISTENT STATEMENTS—MANIFEST INJUSTICE.

    Cross-examination of a criminal defendant which may have re-
    sulted in an improper impeachment with evidence of prior
    misdemeanors and evidence of an arrest which did not result in
    a conviction did not result in manifest injustice, where it was

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 623.

[2] 75 Am Jur 2d, Trial § 743.

[3] 81 Am Jur 2d, Witnesses §§ 587–590.

Impeachment of witness by evidence or inquiry as to arrest, accusa-
tion, or prosecution. 20 ALR2d 1421.

[4] 5 Am Jur 2d, Appeal and Error § 553.

[5] 29 Am Jur 2d, Evidence § 363.

[6] 29 Am Jur 2d, Evidence § 291.

Evidence of acquisition of money or possession of money, source of
which is not traced, as admissible against defendant in criminal
case. 91 ALR2d 1046.

the defendant who introduced this evidence in his attempts to explain away his prior inconsistent statements which the prosecutor was using in an attempt to impeach the defendant.

4. CRIMINAL LAW—EVIDENCE—CROSS-EXAMINATION—IMPEACHMENT—
   PRESERVING QUESTION—MANIFEST INJUSTICE.
   Appellate relief is not available for a prosecutor's improper line of questioning of a defendant on cross-examination unless a manifest injustice is shown where the defense did not object to the line of questioning.

5. CRIMINAL LAW—EVIDENCE—MOTIVE.
   Evidence of a motive is generally admissible in a criminal trial.

6. CRIMINAL LAW—EVIDENCE—MOTIVE—DEFENDANT'S NEED FOR
   MONEY.
   A defendant's need for money may be proved, with limitations, to establish a motive for committing a crime ordinarily committed to obtain money, and evidence that a defendant who was in financial difficulties prior to a robbery later became affluent is admissible; while the Court of Appeals is opposed to a rule or rationale that poor people are more likely to be criminals or that they are more likely to commit crimes which involve thefts of money, where a theft offense is involved, the prosecutor may prove a motive by showing that the defendant, whether poor or relatively affluent, was acutely short of money before the offense occurred.

Appeal from Oakland, Robert B. Webster, J. Submitted June 14, 1977, at Lansing. (Docket No. 30551.) Decided August 9, 1977. Leave to appeal denied, 402 Mich —.

Lawrence Jackson was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Michael J. Modelski,* Assistant Appellate Counsel, for the people.

*Stoller, Talpos, Arnold & Rooyakker,* for defendant on appeal.

Before: D. E. Holbrook, Jr., P. J., and Allen and D. R. Freeman,* JJ.

Per Curiam. On January 30, 1976, the defendant was convicted by an Oakland County jury of armed robbery, MCLA 750.529; MSA 28.797. He was sentenced to a 15–30 year prison term and now appeals as of right.

The charge arose out of the armed robbery of a gas station in Rochester in the early morning hours of September 18, 1975. The station attendant testified that the defendant entered the station and announced a hold-up while holding one hand inside a jacket pocket in a manner which suggested the presence of a weapon. A second individual followed the defendant into the station office and also announced a hold-up. The second individual was brandishing a hunting knife.

The defendant was arrested several days after the robbery on an unrelated assault and battery charge. While in custody, he was questioned by a detective about the armed robbery. He told the detective that he had spent the night of September 17, 1975, at a friend's house and had been at that house when the robbery occurred. The defendant's trial testimony differed from that preliminary statement. At trial he testified that he had been present when the robbery occurred but had been a surprised innocent bystander. He explained his failure to report the incident to the police by stating that he was on parole at the time and was afraid that his parole would be revoked if he was involved, even as a witness, in the armed robbery incident. The prosecutor impeached the defendant with evidence of his prior inconsistent statement given to the detective while he was in custody.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The defendant raises three issues on appeal. Additional factual background will be set forth where needed in connection with each of those issues.

## I. *Failure to sua sponte instruct on the intoxication defense*

The station attendant testified that the defendant appeared to be slightly intoxicated when he entered the station, but that neither his movements nor his speech were impaired. The defendant testified that he had been drinking at several bars immediately before his appearance at the station. The theory of the defense was that the defendant had been an innocent bystander, not involved in any way in the robbery. The defense did not request a jury instruction on the intoxication defense. Nor did it object to the failure to give such an instruction.

GCR 1963, 516.2 states that no party may assign as error the failure to give an instruction unless he objects thereto before the jury retires to begin its deliberations. The courts have engrafted an exception which allows for reversal even in the absence of an objection where the failure to give an instruction results in a manifest injustice. *People v Drake,* 64 Mich App 671; 236 NW2d 537 (1975). We find no manifest injustice in the present case for two reasons. First, the intoxication instruction would have contradicted the defendant's main defense. Second, while there was evidence that the defendant was intoxicated, both witnesses who spoke to that point agreed that the defendant's mental and physical functions were not significantly impaired. Compare *People v Hawkins,* 34 Mich App 60; 190 NW2d 723 (1971).

II. *Mention of prior misdemeanor arrest*

The defendant was already in custody on an assault and battery misdemeanor charge when he was questioned about, and then arrested for, this armed robbery. When questioned at the jail, he made a statement which was inconsistent with his later trial testimony. The defendant attempted to explain that statement—as he previously had explained his failure to report the robbery to the police—by saying that he was already on parole and was afraid that his parole would be revoked if he became involved with the police. The prosecutor questioned that explanation because the defendant was already in jail and being questioned about that armed robbery when he made the statement. The prosecutor was careful not to state why the defendant was already in jail. Without further contribution, the probable inference would have been that he was in jail as a result of having been arrested for the armed robbery. But the defendant, still trying to explain his prior inconsistent statement volunteered that he had been in jail as a result of the assault and battery charge and therefore still had a plausible motive for not mentioning the armed robbery. On appeal, the defendant argues that this exchange resulted in an improper impeachment with evidence of prior misdemeanors, *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), and an arrest which did not result in a conviction. *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973). The following excerpt is typical of what occurred during the prosecutor's cross-examination of the defendant.

"Q *[Raymond Marrow, Assistant Prosecuting Attorney]* He told you that you were being questioned about an armed robbery, correct?

A That's true, yes.

Q So, now you're involved with the police and you were under arrest and you are told they are questioning you about an armed robbery, is that right?

A Yes.

Q You told them you spent the entire night at Thomas Burgeron's house, is that right?

A Yes.

Q Why did you lie?

A Why?

Q Yes.

A I didn't want to get involved in no armed robbery. Man, that's what I'm trying to tell you. I didn't want to get involved in any trouble with that.

Q Mr. Jackson, when you were under arrest—

A (interposing) I was not under arrest for that at the time. That's why I'm telling you. I was under arrest for assault and battery."

The defense never objected to this line of questioning; hence, appellate relief is not available unless a manifest injustice is shown. *People v Clark,* 57 Mich App 339; 225 NW2d 758 (1975). We see no manifest injustice in the present case. The prosecutor was entitled to ask why the defendant had made the earlier inconsistent statement. *People v Baldwin,* 74 Mich App 700; 254 NW2d 619 (1977). The defendant attempted to explain away the statement by pointing out that he was under arrest for assault and battery, not for armed robbery, when he made the initial statement.

The important point is that it was the defendant who mentioned the assault and battery charge. While laying the foundation for the impeachment with the prior inconsistent statement, the prosecutor was careful to state only that the defendant was in jail when the statement was made. The prosecutor was required to tell the defendant when, where, and to whom the statement was

made before the statement itself could be introduced. *People v Gunne,* 65 Mich App 216; 237 NW2d 256 (1975) (KELLY, J., dissenting), and *People v Gunne (On Rehearing),* 66 Mich App 318; 239 NW2d 603 (1976). It was the defendant, not the prosecutor, who repeatedly revealed that he was then in custody as a result of the assault and battery charge, not the armed robbery charge. In these circumstances, we do not believe that error occurred. Even if there was error, it benefited both sides to some extent. The defendant definitely has not shown the type of manifest injustice that would cause us to reverse on this basis where there was no objection to the questioning in the trial court.

III. *Evidence of the defendant's financial status*

On cross-examination, the prosecutor asked the defendant if he was employed at the time of the armed robbery. The defendant answered that he had not been employed at that time. He also stated that on the evening of the robbery he had sold a watch to a bar patron in order to raise money enough to purchase drinks for himself and two companions.

Defense counsel did not object to this line of questioning. Defendant argues on appeal that reversible error occurred when the prosecutor asked him about his employment status and his financial status because unemployment and poverty tend neither to prove guilt of a substantive offense nor lack of credibility in a witness. The defendant relies on *People v Johnson,* 393 Mich 488; 227 NW2d 523 (1975), and *People v Lorenzo Williams,* 63 Mich App 389; 234 NW2d 537 (1975).

Since there was no objection to the prosecutor's questions, the issue was not properly preserved for

appeal and we would reverse only upon a finding of manifest injustice. For reasons more fully explained below, we find no manifest injustice and hence reject the defendant's argument on appeal. *People v Thomas Jones,* 73 Mich App 107; 251 NW2d 264 (1976), is directly on point.

While we reject the defendant's argument in this case, the question raised is important and deserves some comment. *People v Johnson, supra,* involved a conviction for carrying a concealed weapon. MCLA 750.227; MSA 28.424. The Supreme Court held that neither poverty nor unemployment tended to prove that a person might be guilty of carrying a concealed weapon. The Court ruled that those factors were also irrelevant to a determination of a witness's credibility. The holding as to credibility would clearly apply in all cases. But the holding that unemployment and poverty are not evidence of guilt of carrying a concealed weapon would not necessarily apply where the charge involves a theft of money as it does in the present case.[1]

In *People v Green,* 74 Mich App 601; 254 NW2d 788 (1977), a murder conviction was reversed because of a series of prosecutorial abuses including extensive questioning about the defendant's financial status. But *Green,* like *People v Johnson, supra,* may properly be distinguished from the present case because the charged offense did not involve a theft of money.[2]

---

[1] This Court has also reversed because of questions about financial status in a larceny case where experience with a particular prosecutor showed that he repeatedly emphasized unemployment and poverty on the clear assumption that such persons were uniformly more likely to commit criminal acts. *People v LaForte,* 75 Mich App 582; 256 NW2d 44 (1977). We see no evidence of such a sustained pattern of abuse in the present case.

[2] One of the alternative prosecution theories in *Green* was that the victim was murdered in return for a large sum of money. However,

Evidence of a motive is generally admissible in a criminal trial. *People v Dye,* 356 Mich 271; 96 NW2d 788 (1959), *cert den* 361 US 935; 80 S Ct 367; 4 L Ed 2d 355 (1960), *People v Parker,* 8 Mich App 414; 154 NW2d 615 (1967).

Wharton states that a need for money may be shown in order to establish a motive for a theft offense.

"The defendant's need for money may be proved to establish a motive for committing a crime ordinarily committed to obtain money. And evidence that a defendant who was in financial difficulties prior to a robbery later became affluent is admissible.

"The evidentiary value of circumstances establishing a motive that applies to an entire class or to a community is much less than when it affects the accused only. Thus, the fact that an accused charged with larceny desired to become rich would be of little weight in establishing his guilt of an offense, because a desire for wealth is universal, and common to all persons, but on a question of forgery, it may be shown that at about the date charged the accused tried to borrow money." 1 Wharton's Criminal Evidence (13th ed), § 172, pp 320–321.

Absent an express prohibition by the Supreme Court, we would hold that, with some limitations, a defendant's need for money may be shown in order to establish a motive for a theft offense. We do not believe that *People v Johnson, supra,* prohibits that holding. We are opposed to a general rule or rationale that poor people are more likely to be criminals or that they are more likely to commit crimes which involve thefts of money. But

the evidence supporting that theory was extremely weak, depending mostly upon inferences to be drawn from the defendant's financial status. Therefore, we believe that *Green* may properly be classed with *People v Johnson, supra,* (nonfinancial motive) and distinguished from the present case.

we believe that, where a theft offense is involved, the prosecutor may prove a motive by showing that the defendant—whether poor or relatively affluent—was acutely short of money immediately before the offense occurred. Given such a rule, we would hold that the prosecutor's questions in the present case were proper even if the defendant had properly preserved this question for appeal by making a timely objection.

We also note that, in contrast to *People v Johnson, supra,* the questioning about the defendant's financial status in the present case was brief and done without unnecessary dramatics. Compare *People v Baldwin, supra.*

### Conclusion

The defendant's conviction and sentence are affirmed.