PEOPLE v STANTON

Docket No. 78-2788. Submitted January 2, 1980, at Lansing.—Decided
    May 19, 1980.

    Defendant, Richard W. Stanton, was convicted of armed robbery
        and being a habitual criminal in the Ingham Circuit Court,
        James T. Kallman, J. Defendant appeals, raising numerous
        issues. *Held:*

        1. Voluntary intoxication is a valid defense to any crime
        requiring specific intent, such as armed robbery.

        2. An in-court identification of a defendant by an eyewitness
        who has participated in an improper pretrial identification
        procedure must be excluded as evidence unless there is a
        showing by clear and convincing evidence that the identifica-
        tion was made on some basis other than the improper pretrial

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 82, 107.
    67 Am Jur 2d, Robbery §§ 4, 15, 46.
    Modern status of the rules as to voluntary intoxication as defense
        to criminal charge. 8 ALR3d 1236.
    Effect of voluntary drug intoxication upon criminal responsibility.
        73 ALR3d 98.
[2] 5 Am Jur 2d, Appeal and Error §§ 829, 831, 851, 887.
    75 Am Jur 2d, Trial §§ 345, 416.
[3, 4] 29 Am Jur 2d, Evidence § 367 *et seq.*
    Admissibility of evidence as to extrajudicial or pretrial identifica-
        tion of accused. 71 ALR2d 449.
    Admissibility of evidence of lineup identification as affected by
        allegedly suggestive lineup procedures. 39 ALR3d 487.
    Admissibility of evidence of showup identification as affected by
        allegedly suggestive showup procedures. 39 ALR3d 791.
[5] 5 Am Jur 2d, Appeal and Error § 624.
    29 Am Jur 2d, Evidence § 363.
    Counsel's references in criminal case to wealth, poverty, or finan-
        cial status of defendant or victim as grounds for mistrial, new
        trial, or reversal. 26 ALR3d 839.
[6] 5 Am Jur 2d, Appeal and Error §§ 624-627.
[7] 81 Am Jur 2d, Witnesses § 581 *et seq.*
    Propriety, on impeaching credibility of witness in criminal case by
        showing former conviction, of questions relating to nature and
        extent of punishment. 67 ALR3d 775.

procedure. The factors supporting an independent basis for an in-court identification must be totally unrelated to any pretrial confrontation, and may include factors such as consideration of the witness's opportunity for observation during the crime, prior knowledge of the defendant's identity, accuracy of description, any discrepancy between a pre-lineup description and actual appearance of the defendant, identification of any other person prior to the lineup, failure to identify the defendant on a prior occasion, the lapse of time between the crime and the lineup identification, and any idiosyncratic or special features of the defendant.

3. Evidence of poverty and unemployment to show motive is generally not admissible because its probative value is out-. weighed by unfair prejudice and discrimination toward a large segment of the population. The risk is that the jurors will view defendant as a "bad man".

4. Reversal of a defendant's conviction because of improper questioning of a witness by the prosecutor is not warranted absent a showing of manifest injustice where the defendant failed to object. The trial court did not abuse its discretion in allowing the prosecutor to cross-examine a witness concerning the defendant's prior convictions to counter the issue raised by the defendant whether the commission of the crime was "out of character" for him where evidence of his convictions had already been admitted to impeach his credibility.

Affirmed.

1. CRIMINAL LAW — DEFENSES — VOLUNTARY INTOXICATION — SPE-CIFIC INTENT CRIMES — ROBBERY.

Voluntary intoxication is a valid defense to any crime requiring specific intent, such as armed robbery.

2. EVIDENCE — RELEVANCY — TRIAL JUDGE — DISCRETION — APPEAL.

A trial judge has the discretion of ruling on the relevancy of evidence and a decision made in the exercise of that discretion should not be reversed unless it is clearly erroneous and indicates an abuse of discretion.

3. CRIMINAL LAW — WITNESSES — IDENTIFICATION — IMPROPER PRO-CEDURE — INDEPENDENT BASIS.

An in-court identification following a questionable or illegal confrontation will not be deemed prejudicial if there is an independent basis for the in-court identification.

4. CRIMINAL LAW — WITNESSES — IDENTIFICATION — IMPROPER PRO-CEDURE — INDEPENDENT BASIS.

The factors supporting an independent basis for an in-court

identification of a defendant by a witness when a pretrial identification has been rendered invalid must be totally unrelated to any pretrial confrontation, and may include factors such as consideration of the witness's opportunity for observation during the crime, prior knowledge of the defendant's identity, accuracy of description, any discrepancy between a pre-lineup description and actual appearance of the defendant, identification of any other person prior to the lineup, failure to identify the defendant on a prior occasion, the lapse of time between the crime and the lineup identification, and any idiosyncratic or special features of the defendant.

5. Criminal Law — Evidence — Motive — Poverty — Unemployment.

Evidence of poverty and unemployment to show motive is generally not admissible because its probative value is outweighed by unfair prejudice and discrimination toward a large segment of the population, and the risk is that the jurors will view defendant as a "bad man".

6. Appeal — Criminal Law — Improper Questioning — Preserving Question.

Reversal of a defendant's conviction because of improper questioning of a witness by the prosecutor is not warranted absent a showing of manifest injustice where the defendant had failed to object.

7. Criminal Law — Evidence — Impeachment — Prior Convictions.

A trial court did not abuse its discretion in allowing the prosecutor to cross-examine a witness concerning a defendant's prior convictions to counter the issue raised by the defendant whether the commission of the crime was "out of character" for defendant where evidence of his convictions had already been admitted to impeach his credibility.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, *Michael G. Woodworth,* Chief Appellate Attorney, and *Charles M. Sibert,* Assistant Prosecuting Attorney, for the people.

*Charles A. Palmer,* for defendant on appeal.

Before: ALLEN, P.J., and V. J. BRENNAN and MacKENZIE, JJ.

MacKENZIE, J. Defendant appeals as of right his jury conviction on March 28, 1978, of armed robbery, contrary to MCL 750.529; MSA 28.797, and guilty plea on April 12, 1978, to a supplemental information charging him as a habitual offender. He was sentenced to a term of 7 to 30 years imprisonment with credit for 278 days served.

The charge stemmed from the armed robbery of a Quality Dairy Store in Haslett, Michigan, on August 11, 1977, at approximately 4:30 p.m. Complainant, Doris Robinson, the store manager, testified that a man, whom she identified as defendant, forced her at knife-point to open a cash register from which he removed $59 in small bills.

Complainant's husband, Russell Robinson, observed defendant run from the store. The police, having received defendant's description from the Robinsons and a phone call from a resident with a police radio, proceeded to the home of defendant's brother, who directed them to a room in which they found defendant in the process of shaving his beard. Since defendant matched the description given by the Robinsons—bearded, glazed eyes and wearing blue jeans and a blue T-shirt—police brought defendant to the scene where he was identified by the Robinsons.

The first issue is whether the trial court erred in limiting evidence of defendant's intoxication to the 24-hour period immediately preceding the robbery where the defense asserted was voluntary intoxication vitiating the specific intent necessary to commit an armed robbery. The defense of insanity will not be considered since defendant did not comply

with the notice provisions in MCL 768.20a; MSA 28.1043(1) and MCL 768.21; MSA 28.1044.

In *People v Crittle,* 390 Mich 367, 371; 212 NW2d 196 (1973), the Michigan Supreme Court adopted the standard expressed by Justice COOLEY in *People v Walker,* 38 Mich 156, 158 (1878), to determine whether the defense of intoxication vitiating specific intent has been proved:

"While it is true that drunkenness cannot excuse crime, it is equally true that when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist. In larceny the crime does not consist in the wrongful taking of the property, for that might be a mere trespass; but it consists in the wrongful taking with felonious intent; and if the defendant for any reason whatever, indulged no such intent, the crime cannot have been committed."

Therefore, any evidence relevant to the precise issue of whether defendant actually had the specific intent to rob the store should have been admitted.

In the case at bar, defendant sought to establish that he could not have intended to rob the store because his sustained drinking for the ten-day period preceding the robbery resulted in his inability to tolerate a quantity of alcohol consumed on the day of the offense. On a separate record, several acquaintances of defendant testified that they were with him at various times during that period. Their testimony regarding the amount of alcohol consumed by defendant was evaluated by an expert witness on alcoholism, Dr. Richard C. Bates.

The trial court has the discretion to determine the admissibility of evidence on the basis of relevancy. Its decision will not be reversed unless it is

clearly erroneous, constituting an abuse of discretion. *People v Flores,* 92 Mich App 130, 134-135; 284 NW2d 510 (1979). We believe that the trial judge acted properly within his discretion in excluding evidence of defendant's intoxication prior to the 24-hour period preceding the robbery.

Although we do not believe that *Crittle* in all cases precludes a showing of lack of intent due to sustained alcohol consumption over a short period of time, the proffered evidence herein was deficient in that the testimony of defense witnesses, considered together, did not approach establishing the quantity of alcohol consumed by defendant or that he was drinking constantly. Therefore, there was insufficient data for Dr. Bates, who had never examined defendant, to form an opinion as to defendant's ability to form the requisite specific intent. Indeed, Dr. Bates admitted he would have to speculate on the amount of alcohol consumed by defendant and its effect on his ability to form the specific intent to rob. In these circumstances, the probative value of the evidence is outweighed by the likelihood it will confuse the issues and mislead the jury. MRE 403. Further, defendant was allowed to present his defense, including the testimony by Dr. Bates, within the 24-hour time frame set by the trial court.

Defendant next contends that his in-court identification by the Robinsons was impermissibly tainted by their on-the-scene identification which was unnecessarily suggestive.[1] Mrs. Robinson had originally described defendant to police as having light brown hair, a full beard and moustache and

---

[1] Defendant does not argue that he was wrongfully denied his right to counsel by the on-the-scene identification. In any event, an exception to the rule requiring counsel exists when an on-the-scene identification takes place close in time to the occurrence of the offense. *People v Tucker,* 86 Mich App 608; 273 NW2d 498 (1978).

appearing scared and glassy-eyed. She said he was approximately 5 feet 7 inches tall, of medium build, and was wearing blue jeans and a blue T-shirt; further, that he did not stumble, fall or weave, and she detected no odor of alcohol on his breath. Mr. Robinson did not observe defendant at close range but observed defendant's beard and clothing.

We need not reach the issue of whether the on-the-scene identification of defendant was unduly suggestive. An in-court identification following a questionable or illegal confrontation will not be deemed prejudicial if there is an independent basis for the in-court identification. See *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977).

Under the standards set forth in *Kachar, supra,* we find that an independent basis existed for the in-court identifications by the Robinsons. See 400 Mich 78, 95-96. Mrs. Robinson had previously seen defendant in the store a few weeks prior to the incident. She stood near defendant during the armed robbery for three to five minutes. She identified defendant only 15 minutes after the incident. No discrepancies appear between the initial description given by the Robinsons and defendant's actual description. Mrs. Robinson had not previously identified defendant, but she had never failed to identify him. Nor did the Robinsons identify someone else as the culprit prior to the on-the-scene identification. Mrs. Robinson was not fatigued or under the influence of alcohol or drugs at the time of the identification but was nervous, considering the violence of the episode. Finally, defendant was identified as having "glazed eyes", a distinguishing feature noticed by at least one arresting officer.

Defendant's third contention of error is that the

prosecutor's questioning of defendant eliciting that he was unemployed and had no income to show motive for the robbery, coupled with the court's instruction that the jury could consider what motive defendant may have had, mandates reversal. We disagree.

Evidence of poverty and unemployment to show motive is generally not admissible because its probative value is outweighed by unfair prejudice and discrimination toward a large segment of the population, and the risk is that the jurors will view defendant as a "bad man". *People v Henderson,* 408 Mich 56; 289 NW2d 376 (1980), *People v Johnson,* 393 Mich 488, 496-497; 227 NW2d 523 (1975).

However, where, as here, defendant fails to object promptly to the prosecutor's questioning, reversal is not warranted absent a showing of manifest injustice. *Cf., People v John Moore,* 78 Mich App 150, 156; 259 NW2d 403 (1977), and *People v Thomas Jones,* 73 Mich App 107, 110; 251 NW2d 264 (1976). The questioning herein did not constitute manifest injustice. The references were few and arguably relevant to show the source of the cash found on defendant's person. Defendant first raised the issue of his unemployed status by testifying on direct examination that he had just been released from jail for nonsupport. See *People v Thomas Jones, supra.* The court's instruction on motive was entirely proper and in accord with CJI 4:8:01. The correct course of procedure here was for defense counsel to object to the questioning itself and move for a mistrial or request a curative instruction.

The prosecutor injected defendant's three prior larceny convictions into a hypothetical question[2]

---

[2] Defense trial counsel asked Dr. Bates the following hypothetical questions:

directed to defendant's expert regarding the effect on his opinion on whether defendant had the specific intent to commit the crime. We do not believe this requires reversal. Evidence of prior convictions is only admissible to attack a witness's credibility. MRE 609. Nor is character evidence ordinarily admissible to prove conduct. MRE 404. Thus, while we do not condone such a practice, it is critical here that defense counsel raised on direct examination the issue of whether commission of a crime was "out of character" for defendant. On cross-examination, the prosecutor was entitled to elicit from the witness anything tending to weaken, modify or explain the witness's

---

"Q. Now, doctor, if you were to assume that an individual engaged in a period of heavy drinking, various types of alcohol for six or seven hours on one evening followed by some sleep, followed by heavy drinking for a period of time the next day without consuming any food the following day and to assume that that individual engaged in activities that were described as being uncharacteristic for that person, that is, to engage in alleged criminal activities in broad daylight without an attempt to mask their identity, to take some money but not others that was there available at a place where it was likely that the individual would be known, and, that the individual thereafter claimed no memory, do you have an opinion as to whether or not that person suffered from any of these maladies, which you have described here?

"A. The history would match hundreds of similar histories that I have heard in interviewing alcoholic people.

"Q. That would be all those things would be consistent.

"A. Yes."

On cross-examination, the prosecutor was allowed to ask the following question of Dr. Bates:

"Q. (By Mr. Edwards) Doctor, talking about out of character, three prior, say the individual that we are talking about in this hypothetical had been convicted of three prior felonies all involving a larceny type situation or dishonesty, if you will. Would that enter into your opinion as to whether or not this or whether that act was out of character for the individual? We are going back over 10 years now.

"A. If you were similarly intoxicated on those three other occasions, —let me rephrase that. If those acts were committed, when he was sober, it would cause me to disregard the part of the questions that had to do with whether or not it was out of character. It would not alter my opinion as to whether the crime done in broad daylight in front of people, who would recognize one was senseless or not."

testimony on direct examination. *Malicke v Milan,* 320 Mich 65, 70; 30 NW2d 440 (1948), *Schwartz v Triff,* 2 Mich App 379, 383; 139 NW2d 907 (1966). Evidence of defendant's three prior larceny convictions had already been admitted to impeach defendant's credibility. Under these circumstances, we cannot say the trial judge abused his discretion in allowing the cross-examination. See *People v Taylor,* 386 Mich 204, 208; 191 NW2d 310 (1971).

Finally, defendant argues that his guilty plea to the habitual offender information should be vacated because the trial court failed to comply with the dictates of GCR 1963, 785.7 as required by *People v Stevens,* 88 Mich App 421; 276 NW2d 910 (1979). Although *Stevens,* 428, requires strict adherence to GCR 1963, 785.7 in proceedings in which a defendant pleads guilty to a recidivist charge, it was given prospective effect only due to reliance on *People v Parker,* 50 Mich App 537; 213 NW2d 576 (1973).

Here we find no error as the trial judge complied with the requirements in the habitual offender act, MCL 769.13; MSA 28.1085. The trial judge ascertained that defendant understood the nature of the habitual offender proceedings. The information had previously been read in open court. The trial court discussed the armed robbery and false pretenses convictions with defendant and informed him that the jury was impaneled and available to try the matter. Defendant stated that he was the same person charged in the information.

Affirmed.